# Commonwealth of Massachusetts
## NORFOLK SUPERIOR COURT
### Case Summary
### Civil Docket

*SCANNED DATE: 3-23-05*

*05-CV-10310-*
*FILED*
*IN CLERKS OFFICE MLW*

## NOCV2005-00180
### Sullivan v Woodruff III et al

*2005 MAR 23 A 11: 22*

*U.S. DISTRICT COURT*
*DISTRICT OF MASS.*

| | | | |
|---|---|---|---|
| **File Date** | 01/31/2005 | **Status** | Disposed: transferred to other court (dtrans) |
| **Status Date** | 03/17/2005 | **Session** | D - Non Jury-CtRm 8 |
| **Origin** | 1 | **Case Type** | D13 - Declaratory judgement (231A) |
| **Lead Case** | | **Track** | A |

| | | | | | |
|---|---|---|---|---|---|
| **Service** | 05/01/2005 | **Answer** | 06/30/2005 | **Rule12/19/20** | 06/30/2005 |
| **Rule 15** | 04/26/2006 | **Discovery** | 03/22/2007 | **Rule 56** | 05/21/2007 |
| **Final PTC** | 09/18/2007 | **Disposition** | 01/31/2008 | **Jury Trial** | No |

### PARTIES

**Plaintiff**
Daniel J Sullivan
Active 01/31/2005

**Private Counsel 546099**
Victor H Polk Jr
Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110
Phone: 617-951-8000
Fax: 617-951-8736
Active 01/31/2005 Notify

**Defendant**
William K Woodruff III
Service pending 01/31/2005

**Defendant**
Woodruff Family LTD
Service pending 01/31/2005

**Defendant**
Optical Switch Corporation
Service pending 01/31/2005

1.0

COMMONWEALTH OF MASSACHUSETTS

FILED
CLERKS OFFICE

NORFOLK, SS

SUPERIOR COURT
DEPARTMENT OF
THE TRIAL COURT
DISTRICT OF MASS.

DANIEL J. SULLIVAN )
)
Plaintiff, )
)
v. )  CIVIL ACTION
)  NO.
WILLIAM K. WOODRUFF, III, )
WOODRUFF FAMILY, LTD. and )        05-00180
OPTICAL SWITCH CORPORATION )
Defendants. )
)

## COMPLAINT FOR DECLARATORY JUDGMENT

1.      By this complaint, plaintiff Daniel J. Sullivan ("Sullivan") seeks a declaration, pursuant to M.G.L. c. 231A, §1 *et seq.*, that he is not liable for any damages allegedly suffered by defendants William K. Woodruff, III ("Woodruff"), Woodruff Family, Ltd. ("WFL") or Optical Switch Corporation ("OSC"). Sullivan is specifically seeking a declaration that he is not liable for any obligations or liability asserted against Holographic Lithography Systems, Inc. ("HLS"), a dissolved Delaware corporation.

### PARTIES

2.      Sullivan is an individual residing in Wellesley, Massachusetts.

3.      On information and belief, Woodruff is an individual residing in Texas.

4.      On information and belief, WFL is a limited partnership in the State of Texas, which controls Woodruff's personal and family investments.

5.      On information and belief, OSC is a Texas corporation whose charter has been revoked.

## JURISDICTION AND VENUE

6.    This Court has personal jurisdiction over defendants pursuant to M.G.L. c. 223A §3.

7.    Venue is proper under M.G.L. c. 223 §1.

## BACKGROUND FACTS

A.    **WFL's Investment in Holographic Lithography Systems**

8.    In or around September 1996, HLS was formed and incorporated in the state of Delaware and its principal place of business was located in Bedford, Massachusetts. Sullivan served as President and Chief Executive Officer of HLS and served on its Board of Directors.

9.    HLS was formed to develop a proprietary, patented lithography tool and process capable of high resolution patterning.

10.    In or around May 1998, HLS was preparing an updated business plan with the intention of raising additional capital.

11.    In or around May 1998, Sullivan talked with his friend, Gary Nabhan ("Nabhan"), about HLS. Nabhan was employed by William K. Woodruff & Co., Inc., an investment banking firm run by Woodruff.

12.    Nabhan subsequently advised Sullivan that Woodruff was interested in making an investment in HLS. In or around August 1998, Woodruff provided Nabhan with power of attorney.

13.    During 1998, due diligence was performed on behalf of Woodruff and WFL into the contemplated investment in HLS. HLS' facilities in Massachusetts were visited and HLS' technical staff were questioned at length concerning HLS' operations and technology. During the due diligence of HLS on behalf of Woodruff and WFL, in addition to employee interviews, customers and potential customers were interviewed, and HLS' financial information and board minutes were reviewed. During WFL's due diligence, Sullivan did not provide any false or fraudulent information.

-2-

14.    Woodruff also retained Bart Showalter ("Showalter"), of Baker Botts LLP, to perform intellectual property due diligence for the proposed investment in HLS. Showalter, among other things, examined HLS' patents and reviewed documents concerning financing that HLS had previously obtained.

15.    Prior to August 31, 1998, Woodruff was provided a copy of HLS' business plan.

16.    After completing thorough due diligence, Woodruff and WFL made the decision to invest $2 million in HLS. On or about August 31, 1998, HLS agreed to sell WFL 20,672 Series C preferred shares at a price of $96.75 per share. WFL was required to invest $1 million immediately and another $1 million on December 1, 1998.

17.    Sullivan never met Woodruff in person to discuss HLS and had only one telephone conversation with Woodruff prior to WFL's investment. During this conversation, Sullivan did not make any false or fraudulent representations concerning HLS to Woodruff. Sullivan also had a second telephone conversation with Woodruff in or around December 1998 prior to WFL's second investment. During this conversation, Sullivan made no false or fraudulent representations to Woodruff.

18.    Prior to December 1, 1998, HLS agreed to amend the purchase price to approximately $74 a share for the Series C preferred shares.

**B.    Optical Switch Corporation Purchases HLS**

19.    In or around 1999, Nabhan became president and Chief Executive Officer of Optical Switch Corporation ("OSC"). OSC is a Texas corporation with a principal place of business in Dallas, Texas. OSC specializes in the design and manufacture of transparent optical switch modules and subsystems for telecommunications customers. At all relevant times, Woodruff was the majority shareholder of OSC.

20.    In the fall of 1999, OSC inquired about the possibility of using HLS' technology in the manufacturing of its optical switch products. Bob Gardner, OSC's Chief

Technical Officer, visited HLS, and HLS produced samples of its capabilities for OSC to analyze.

21.    In October 1999, Woodruff and Nabhan offered Sullivan the opportunity to invest in OSC. In or around October 29, 1999, Sullivan purchased a total of $200,000 worth of OSC shares for $0.77 per share and, approximately two months later, in or around December 1999, Sullivan purchased an additional $250,000 worth of OSC shares for $45.58 per share. In or around December 1999, Sullivan was appointed to OSC's Board of Directors. Sullivan had no operational involvement in OSC.

22.    By the end of March 2000, OSC had raised $58 million from institutional investors, such as Putnam Investment Management and Wellington Management Company LLP, to fund its operations. As of March 2000, OSC remained interested in acquiring HLS.

23.    In or around May 19, 2000, OSC and HLS entered into an Asset Purchase Agreement ("Agreement"), in which OSC acquired the assets of HLS. Pursuant to this Agreement, OSC acquired the assets of HLS in exchange for (i) 1,020,115 shares of OSC Series B Preferred Stock and (ii) 69,822 additional shares of OSC Series B Preferred Stock, which shares were placed in an escrow account. OSC also agreed to assume the liabilities of HLS.

24.    After the acquisition, Sullivan had no involvement with either OSC's or HLS's day-to-day operations.

25.    Prior to the closing of this acquisition, OSC conducted a thorough review of HLS' technology and retained Wasserstein Perella & Co. ("Wasserstein")[1], a New York City-

---

[1] In or around September 2000, Wasserstein was acquired by Dresdner Bank AG. Wasserstein combined with Dresdner Bank's investment banking unit, Dresdner Kleinwort Benson, and is now known as Dresdner Kleinwort Wasserstein, LLC.

based independent investment banking firm, to provide a fairness opinion on the transaction. On information and belief, Wassertstein was selected and/or approved by Woodruff.

26. Woodruff, Nabhan, Sullivan and Don Navarro ("Navarro") were members of OSC's Board of Directors. Because Woodruff, Sullivan and Nabhan were shareholders of HLS and Nabhan and Sullivan were members of HLS' board of directors, OSC appointed a special committee of the Board to review the HLS transaction and to make a recommendation to the Board of Directors on how to proceed. Navarro was the only member of the special committee and he recommended that OSC should acquire HLS. Sullivan recused himself from the Board vote. The other three members of the Board -- Woodruff, Nabhan, and Navarro -- unanimously agreed to approve OSC's acquisition of HLS.

C.    **Woodruff's Financial Difficulties**

27. On information and belief, in or around 2000, Woodruff had a $6 million personal tax liability to the United States Treasury relating to his 1999 taxes. In an attempt to cure his financial problems, Woodruff desired to sell his OSC stock and requested that OSC buy back his stock. OSC refused to buy back Woodruff's stock.

28. At that time, OSC was also attempting to raise additional capital from outside sources and needed to disclose Woodruff's financial situation to potential investors. Woodruff refused to authorize or make such a disclosure, and, as a result, OSC was prevented from obtaining additional capital.

29. In October 2001, Woodruff requested that OSC loan him $500,000. After Nabhan consulted with Sullivan and others, OSC decided not to loan money to Woodruff.

30. In December 2001, Woodruff removed Sullivan and Nabhan from OSC's Board of Directors. On information and belief, as of this time, OSC had approximately $9.6 million remaining in cash out of the $58 million that it had previously raised.

31.    On information and belief, OSC never generated any significant revenues from the optical switch product line.

**D.    Woodruff , WFL and OSC claim that they were defrauded**

32.    Woodruff, WFL and OSC claim that HLS and Sullivan made a concerted, unlawful effort to benefit themselves and the shareholders of HLS to the detriment of OSC, Woodruff, and WFL.

33.    Woodruff, WFL and OSC claim that HLS and Sullivan made false and fraudulent representations to induce WFL and Woodruff to invest and maintain investment in HLS.

34.    Woodruff, WFL and OSC claim that HLS and Sullivan made false and fraudulent representations to induce OSC to purchase the assets of HLS.

35.    Woodruff, WFL and OSC claim that Sullivan, to their detriment, unlawfully conspired with Nabhan to induce WFL and Woodruff to invest and maintain investment in HLS.

36.    Woodruff, WFL and OSC claim that Sullivan, to their detriment, unlawfully conspired with Nabhan to arrange for OSC to acquire HLS' assets at a highly inflated price.

37.    Sullivan contends that his actions (i) were completely appropriate, (ii) were performed in good faith, (iii) were not fraudulent or unlawful and (iv) were not the cause of any harm allegedly incurred by WFL, Woodruff or OSC.

**COUNT I**
**(Sullivan, As a Director, Officer, Shareholder or Successor of HLS, is Not Liable to Woodruff , WFL or OSC for Any Alleged Damage)**

38.    Sullivan incorporates the allegations of Paragraphs 1-37 as if set fully herein.

39.    HLS was dissolved in June 2000. Prior to its dissolution, HLS paid or made reasonable provision to pay all claims known to the corporation, made such provision as would be reasonably likely to be sufficient to provide compensation for any claim which was the subject of a pending action, and made such provision as would be reasonably likely to be

LITDOCS/586084.1

sufficient to provide compensation for claims that had not been made known to the corporation or that had not arisen but that, based on facts known to the corporation, were likely to arise or to become known within 10 years after the date of dissolution. This included having OSC assume all relevant liabilities of HLS and setting aside funds in escrow concerning certain claims against HLS.

40.    As former director, officer, shareholder or alleged successor of HLS, Sullivan is entitled to a declaration that he is not liable, to WFL, Woodruff or OSC for any damages that they have incurred as a result of WFL's purchase of HLS stock and/or OSC's acquisition of HLS. As former director, officer, shareholder or alleged successor of HLS, Sullivan is entitled to a declaration that he is not liable, to WFL, Woodruff or OSC for any damages that they have incurred because OSC, pursuant to the Asset Purchase Agreement, agreed to assume all liabilities of HLS and at the time of its dissolution, there were no claims known to HLS and no facts known to HLS or to become known to HLS which would be the possible basis for a future claim against HLS.

**COUNT II**
**(Sullivan Is Not Liable to Woodruff, WFL or OSC for Any Alleged Damage)**

41.    Sullivan incorporates the allegations of Paragraphs 1-40 as if set fully herein.

42.    There is an actual case and controversy between the parties concerning their respective rights and obligations, on which a declaratory judgment is necessary and appropriate.

43.    Sullivan is entitled to a declaration that he is not liable to WFL, Woodruff or OSC for any damages that they have allegedly incurred as a result of WFL's purchase of HLS stock and/or OSC's acquisition of HLS. Sullivan is entitled to a declaration that he is not liable to WFL, Woodruff or OSC for any damage that they have allegedly incurred.

WHEREFORE, pursuant to M.G.L. c. 231A, §1 *et seq.,* Sullivan respectfully requests that the Court:

(a)    enter an Order declaring that Sullivan, either individually or as former director, officer, shareholder or alleged successor of HLS, is not liable to WFL for any damages that it has allegedly incurred as a result of WFL's purchase of HLS stock and/or OSC's acquisition of HLS.

(b)    enter an Order declaring that Sullivan, either individually or as former director, officer, shareholder or alleged successor of HLS, is not liable to Woodruff for any damages that he has allegedly incurred as a result of WFL's purchase of HLS stock and/or OSC's acquisition of HLS.

(c)    enter an Order declaring that Sullivan, either individually or as former director, officer, shareholder or alleged successor of HLS, is not liable to OSC for any damages that he has allegedly incurred as a result of WFL's purchase of HLS stock and/or OSC's acquisition of HLS.

(d)    enter an Order declaring that Sullivan, either individually as former director, officer, shareholder or alleged successor of HLS, is not liable to Woodruff, WFL or OSC for any damages that they have allegedly incurred.

(e)    award Sullivan its costs and attorneys' fees; and

(f)    grant such other and further relief as this Court shall deem just and equitable.

LITDOCS/586084.1

Respectfully submitted,

DANIEL J. SULLIVAN
By his attorneys,

Victor H. Polk, Jr. (BBO # 546099)
William F. Benson (BBO # 646808)
Serena D. Madar (BBO # 654326)
BINGHAM MCCUTCHEN LLP
150 Federal Street
Boston, MA 02110
(617) 951-8000

Dated:  January 31, 2005

A TRUE COPY

Attest: _____
Deputy Assistant Clerk
3/17/05

| CIVIL ACTION COVER SHEET | DOCKET NO.(S) 05 C0180 | Trial Court of Massachusetts Superior Court Department County: NORFOLK |
|---|---|---|

PLAINTIFF(S)

DANIEL J. SULLIVAN

DEFENDANT(S)

WILLIAM K. WOODRUFF, III and WOODRUFF FAMILY, LTD. and OPTICAL SWITCH CORP

ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE
VICTOR H. POLK, JR.
BINGHAM McCUTCHEN LLP
150 FEDERAL ST., BOSTON, MA  02110
Board of Bar Overseers number: 546099    617-951-8000

ATTORNEY (if known)
SAMUEL L. BOYD
BOYD & ASSOCIATES
6440 N. CENTRAL EXPRESSWAY UNIVERSITY TOWER, L.B. 48
DALLAS, TX  75206    214-696-2300

## Origin code and track designation

Place an x in one box only:

[XX] 1. F01 Original Complaint
[ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
[ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)

[ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
[ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
[ ] 6. E10 Summary Process Appeal (X)

## TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| D13 | DECLARATORY JUDGMENT G.L. c. 231A | ( F ) | ( ) Yes    (X ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
 1. Total hospital expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . . . . . .
 2. Total Doctor expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . . . . . .
 3. Total chiropractic expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . . . . . .
 4. Total physical therapy expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . . . . . .
 5. Total other expenses (describe) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . . . . . .
 Subtotal $ . . . . . . . . . . . .
B. Documented lost wages and compensation to date . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . . . .
C. Documented property damages to date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . . . .
D. Reasonably anticipated future medical and hospital expenses . . . . . . . . . . . . . . . $ . . . . . . . . . . . .
E. Reasonably anticipated lost wages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . . . .
F. Other documented items of damages (describe) $ . . . . . . . . . . . .
G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

$ . . . . . . . . . . . .
TOTAL $ . . . . . . . . . . . .

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

A TRUE COPY

Attest: _____
Deputy Assistant Clerk

3/17/05

TOTAL $. . . . . . . . . . .

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____    DATE: 1/31/05

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000