UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DANIEL J. SULLIVAN )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>WILLIAM K. WOODRUFF, III, )<br>WOODRUFF FAMILY, LTD. and )<br>OPTICAL SWITCH CORPORATION )<br>Defendants. )<br>) | Civil Action No.<br>05-CV-10310-MLW<br>[ORAL ARGUMENT REQUESTED] |

County of Plymouth        )
                          ) ss.
Commonwealth of Massachusetts  )

### AFFIDAVIT OF DANIEL J. SULLIVAN

Daniel J. Sullivan, being duly sworn, states as follows:

1. I am the Plaintiff in the within action and submitted an Affidavit in opposition to the motion of Defendants William K. Woodruff, III, Woodruff Family, Ltd. and Optical Switch Corporation ("Defendants") to dismiss the within action for lack of subject matter jurisdiction and lack of personal jurisdiction. That Affidavit was dated July 1, 2005. I recently realized that I inadvertently erred in reciting a sequence of events that occurred in the Texas litigation proceedings which are referred to by Defendants in support of their motion. Accordingly, I am resubmitting my earlier Affidavit in which I have made changes to paragraph 9 to correct my error and to update the Court to the fact that Defendants have amended the petition in the Texas

County Court case twice more since the filing of my earlier Affidavit. I have attached as Exhibit 1 to this Affidavit a redlined version of paragraph 9 so that the Court and Defendants can readily see the changes to paragraph 9 of my first Affidavit.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 4th DAY OF AUGUST, 2005.

                                                /s/ Daniel J. Sullivan
                                                _____
                                                Daniel J. Sullivan

# Exhibit

# 1

investment in HLS in Massachusetts. I cannot recall who initiated the specific telephone call, but I recall that the call occurred at the request of Woodruff who wanted information from me about HLS. In the telephone call, I answered Woodruff's questions, including his questions about why I was not participating in the then current round of financing. I informed Woodruff that I already had put capital into HLS, had been working with the company for several years, and had never taken any salary or bonus. Accordingly, I informed him that I had sufficient money and "sweat equity" invested into HLS at the time.

9. After these initial exploratory conversations about investing in HLS, three (3) transactions occurred that underlie the claims Defendants have alleged against me, all of which primarily and substantially occurred in Massachusetts, especially with respect to the interaction between Defendants and me. The three transactions were (1) an investment of $2,000,000 by WFL in HLS; (2) OSC's issuance of a Private Placement Memorandum ("PPM") and the raising of approximately $58,000,000; and (3) the acquisition of HLS by OSC. I will describe those three transactions in detail below, but in short Defendants allege fraud and conspiracy on my part in connection with all three transactions. All three of these transactions, however, to the extent they involved my dealings with Defendants, occurred exclusively in Massachusetts, and I never traveled to Texas in connection with any of the three while Defendants and their representatives made many trips to Massachusetts and engaged in extensive and protracted activities here. Despite the Massachusetts nexus, Defendants filed an action against me based on these transactions in the "District Court" in the State of Texas. Defendants, however, voluntarily "non-suited" me in that action, which I understand under Texas law and as explained in the accompanying memorandum of law means that Texas Courts treat the original action against me

5

as though it had never been filed and never existed. Apparently for tactical reasons that are not entirely clear to me, Defendants and their counsel have repeatedly non-suited numerous and different parties in the Texas proceedings in an apparent attempt to use that process to their benefit. For example, Defendants' latest complaint is the ~~Fourth~~Sixth Amended Petition, in the Texas "County" Court, reflecting the fact it has been amended ~~three~~six (~~3~~6) times, and they non-suited the District Court action against me and have non-suited their claims against other individuals who have challenged personal jurisdiction in Texas. ~~Thus, after~~Before Defendants non-suited me in the District Court case, I filed an action in Norfolk Superior Court in Massachusetts on January 31, 2005 seeking a declaration that I was not liable to any of the Defendants for any of the claims being asserted against me in Texas. Inasmuch as the original District Court action against me ~~had~~has been non-suited -- i.e., under Texas law it was as though it had never been filed -- and no other action was pending against me in Texas when I filed suit, the Massachusetts action should be considered the first filed between Defendants and me. After I filed this action in Norfolk Superior Court, I was added on February 10, 2005 as a defendant in a different Texas case pending in the Texas "County" Court. Defendants have submitted to this Court a copy of the Fourth Amended Petition they filed in the Texas "County" Court action, without apparent explanation of why it supports their motion to dismiss. I have challenged personal jurisdiction over me by filing a special appearance in the Texas "County" Court action and a hearing ~~is~~was scheduled for August 5, ~~2005.~~2005, but Defendants' counsel has requested an extension of the hearing date, advising that he is relying on information he had as of July 29, 2005 regarding my activities in Texas, and therefore will require no discovery in association with my special appearance. A copy of that letter is attached as Exhibit A. A true and accurate copy

6

of my Special Appearance To Present Motion Objecting To Jurisdiction is attached as <u>Exhibit 1</u>.

10.    The facts are that not only did I file my complaint against Defendants first under the Texas procedure they invoked, I understand this Court does have personal jurisdiction over Defendants because of the level of their activities in Massachusetts in connection with the three (3) transactions about which they complain.

### **WFL INVESTMENT IN HLS**

11.    After some initial conversations with Woodruff and Nabhan regarding investment possibilities in HLS, Nabhan telephoned me in Massachusetts and told me that his employer, Woodruff, was interested in making an investment in HLS. Specifically, Nabhan advised that Woodruff was considering making a $2,000,000 investment in HLS. On June 12, 1998, Nabhan, on behalf of Woodruff, wrote me a letter confirming Woodruff's contemplated investment in HLS. A true and accurate copy of that letter is attached as <u>Exhibit 2</u>. Nabhan, on behalf of Woodruff, advised that "[s]ubject to completion by . . . [Woodruff] of business and intellectual property due diligence regarding HLS . . . [Woodruff] will invest a total of $2 million (US) into HLS…." <u>Id.</u>

12.    In order to evaluate HLS' operations and technology, Nabhan and Woodruff sent several representatives to Massachusetts to visit HLS' offices for due diligence. Specifically, on numerous occasions in 1998, representatives of Woodruff and WFL, including Nabhan, visited HLS' facilities in Bedford, Massachusetts and questioned the technical staff at HLS and me at length concerning HLS' operations and technology. Representatives of Woodruff and WFL, including Nabhan, also reviewed, in Bedford, Massachusetts, financial information and the board minutes of HLS. Woodruff and WFL also retained Bart Showalter ("Showalter"), of Baker Botts

7