UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DANIEL J. SULLIVAN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | 05-CV-10310-MLW |
| WILLIAM K. WOODRUFF, III, | ) | [ORAL ARGUMENT REQUESTED] |
| WOODRUFF FAMILY, LTD. and | ) | |
| OPTICAL SWITCH CORPORATION | ) | |
| Defendants. | ) | |
| | ) | |

**OPPOSITION OF PLAINTIFF DANIEL J. SULLIVAN TO MOTION OF
DEFENDANTS FOR DISCOVERY ON JURISDICTIONAL ISSUES AND FOR LEAVE
TO FILE SUPPLEMENTAL REPLY**

This memorandum of law is being submitted on behalf of Plaintiff Daniel J. Sullivan

("Sullivan") in opposition to the motion of Defendants Optical Switch Corporation ("OSC"),

William K. Woodruff, III ("Woodruff") and Woodruff Family Limited ("WFL") (hereinafter

jointly referred to as "Defendants") for (1) discovery on jurisdictional issues, and for (2) leave to

file supplemental reply (the "Discovery Motion"). In addition, Defendants concurrently filed (1)

a motion for leave to file a preliminary reply (the "Motion for Leave") and (2) a preliminary

reply to Sullivan's opposition to the motion to dismiss (the "Preliminary Reply").

I. Background

A. Argument Summary

Despite Defendants' request for discovery on jurisdictional issues, discovery is not

necessary to establish either subject matter or personal jurisdiction. Further, because the

jurisdictional issues in this case are resolvable without discovery, there is no need for Defendants

to file a supplemental reply to reflect such discovery. The question of whether subject matter

jurisdiction exists does not require discovery, because Defendants themselves have admitted

diversity of citizenship, and removed this action to this Court on that basis. The question of

whether personal jurisdiction over Defendants exists also does not require discovery because this Court already has sufficient information to make an informed decision. Furthermore, what Defendants actually seek is discovery from Sullivan and third parties to determine Sullivan's and their own contacts with Texas which are not relevant to whether Defendants had sufficient contact with Massachusetts to justify personal jurisdiction over them. Of course, to the extent there is a question about Defendants' contacts with Massachusetts, Defendants already have knowledge of their own contacts and need no discovery for that purpose.

    B. Factual Background

      The current dispute arises out of Defendants' relationship with Sullivan. Sullivan, a Massachusetts resident, was President, Chief Executive Officer, and a member of the Board of Directors of Holographic Lithography Systems, Inc. ("HLS"). ¶5, Affidavit of Daniel J. Sullivan dated August 4, 2005 ("Sullivan Aff."). In 1998, WFL, with Woodruff's knowledge and involvement, invested $2 million in HLS. *Id.*, ¶11-17. Woodruff's agent Gary Nabhan ("Nabhan") conducted many of the negotiations relating to WFL's investment in HLS. *Id.* Woodruff also participated in negotiations surrounding the investment. *Id.*, ¶15. In 1999, Woodruff solicited Sullivan in Massachusetts to invest in OSC, of which Woodruff was the majority shareholder. *Id.*, ¶18. At the request of Woodruff and Nabhan, Sullivan joined the Board of Directors of OSC. *Id.* Around the same time period, but without significant involvement from Sullivan, OSC created a Private Placement Memorandum ("PPM"). *Id.*, ¶19. The PPM issued on December 24, 1999, and succeeded in raising approximately $58 million dollars, of which more than $35 million was raised from individuals and entities based in Massachusetts. *Id.*, ¶20. In the fall of 1999, OSC first began inquiring about the possibility of using the HLS lithography technology in the manufacture of its optical switch products. *Id.*, ¶21. OSC later decided that, at least in part, for strategic reasons to prevent HLS technology from being used by OSC competitors, it would acquire HLS. *Id.*, ¶22. A Supplemental PPM was issued on March 24, 2000 to reflect this interest. *Id.*, ¶21. In May of 2000, OSC and HLS entered into an asset purchase agreement in which OSC acquired the assets of HLS. *Id.*, ¶27.

After the acquisition, Sullivan was not involved in the day-to-day activities of HLS, and at no time was he involved in the day-to-day activities of OSC. *Id.*, ¶28. In December of 2001 Sullivan was removed from the Board of Directors of OSC. *Id.*, ¶30. Subsequent to the above described activities, Defendants apparently have suffered significant financial loss and blame Sullivan for that loss. Sullivan is seeking relief in this Court to resolve completely all disputes that exist between Sullivan and Defendants.

    C. Procedural Background

    Defendants originally filed an action against Sullivan in the Texas state "District" Court on November 18, 2004. That case subsequently was non-suited by Defendants, however, which, under Texas law, means that the suit is treated as though it never existed. *See, e.g., Alvarado v. Hyundai Motor Co.*, 885 S.W.2d 167, 174 (Tex. App.--San Antonio 1994, writ granted) ("The nonsuit or dismissal is not an adjudication of the rights of the parties but merely places them in the position they were in as if suit had never been filed."), *rev'd on other grounds,* 892 S.W.2d 853 (citing *Crofts v. Court of Civil Appeals*, 362 S.W.2d 101, 103 (Tex. 1962) ("just as if the suit had never been brought")). Sullivan filed the present action in Norfolk Superior Court on January 31, 2005. On February 10, 2005 Sullivan was added to the Texas "County" Court action.[1] Sullivan subsequently entered a special appearance to contest jurisdiction, which has yet to be heard.

    While Defendants urge this Court to believe that Sullivan has been responsible for needless delay and accuse Sullivan of delaying his special appearance, Defendants ignore the reality of the situation. *See* Discovery Motion, pp. 6-7 (accusing Sullivan of "calculated postponements of his Texas Special Appearance hearing"). Sullivan originally was prepared to

---

[1] Defendants assert that they "consolidated" the actions. *See Discovery Motion*, p.2. This "consolidation" does not refer to any formal, court-sanctioned procedure. Defendants merely added Sullivan to the "County" Court action and non-suited him from the District Court action.

argue his special appearance in the Texas District Court action, but was denied the opportunity when Defendants "non-suited" Sullivan on the very day the special appearance was scheduled to be heard. Sullivan again was prepared to argue his special appearance on August 5, 2005 in the County action, but counsel for Defendants requested an extension, which in the spirit of cooperation, Sullivan's Texas counsel granted. *See* Sullivan Aff., Exhibit A (letter agreement changing date of special appearance hearing). Any delay in resolution of Sullivan's challenge to jurisdiction in Texas is not the result of Sullivan's desire to prolong the Texas decision on his special appearance. The attached letter agreement also raises the question of what, besides delay, Defendants are seeking to accomplish by conducting discovery relating to Sullivan's Texas contacts in the Massachusetts action. Defendants had the opportunity to conduct such jurisdictional discovery in Texas, but did not do so. In addition, they have agreed to close the collection of evidence on Sullivan's special appearance as of July 29, 2005, so any such discovery would not be admissible to aid their arguments of jurisdiction in the Texas "County" action. Of course, Sullivan's contacts with Texas have no bearing on the matter before the Court.

When Defendants argue that Sullivan purposefully caused a delay by receiving an extension to respond to their motion to dismiss in this action, Defendants ignore that the extension was necessitated by Sullivan's retention of new counsel. Defendants, on the other hand, have filed seven (7) separate versions of their petition in the Texas "County" action, sometimes changing the parties involved, sometimes changing the allegations, and preventing the resolution of the matter in Texas. Of course they also filed and non-suited the Texas District Court action as well. Defendants' pattern of non-suiting and amending their multiple petitions has caused the Texas "County" action to be at a virtual standstill.

II. Discovery Is Not Necessary To Determine Subject Matter Or Personal Jurisdiction

A. Discovery Is Not Necessary To Determine Subject Matter Jurisdiction

Defendants have moved to dismiss, arguing that there is no subject matter jurisdiction over Sullivan's declaratory judgment action, because there is no independent basis for federal

-4-

subject matter jurisdiction. This argument ignores the fundamental doctrine of diversity of citizenship which establishes subject matter jurisdiction. *See* Steven Baiker-McKee, William Janssen, & John B. Corr, *Federal Civil Rules Handbook 2005,* 912 (2005) ("A plaintiff seeking declaratory relief must establish an independent basis for the district court's subject matter jurisdiction (*e.g.*, diversity of citizenship **or** federal question)") (emphasis added). Subject matter jurisdiction through diversity requires complete diversity of citizenship and more than $75,000, exclusive of interest, in dispute. Defendants removed the present action from Massachusetts state court based on a representation of jurisdiction in this Court, to wit, diversity of citizenship, which Defendants themselves acknowledge is present in their Discovery Motion. *See* Discovery Motion, ¶5 ("Next, *other than diversity jurisdiction invoked by Defendants upon removal*, no independent basis for federal subject matter jurisdiction exists....") (emphasis added). Whether or not a separate independent basis for federal subject matter jurisdiction exists is irrelevant, but Defendants cannot in good faith remove this action to this Court and then assert this Court has no subject matter jurisdiction. Fed.R.Civ.P. 11.

If, however, there were no jurisdiction in this Court, then the proper remedy would be to remand the action to the Norfolk Superior Court, where the action was initiated.

Given that Defendants have plead diversity of citizenship, which Sullivan does not contest, no amount of discovery could change the existence of subject matter jurisdiction in the present case. Therefore, discovery should not be allowed on the basis that it could assist this Court in determining subject matter jurisdiction.

B. Discovery Is Not Required To Establish Personal Jurisdiction

Defendants argue that they seek discovery in order to provide this Court "with the universe of relevant materials required to make a reasoned and fair ruling as to whether it has personal jurisdiction over Defendants...." *See* Discovery Motion, p. 6. There is no better source

of information regarding the extent of Defendants contacts with Massachusetts than Defendants themselves. No amount of discovery served upon Sullivan and third parties can change that fact.

Defendants have attached an affidavit from Woodruff to their Preliminary Reply.[2] That affidavit originally was filed by Defendants to establish Sullivan's Texas contacts in the Texas "County" Court action, not to establish a lack of Defendants' Massachusetts contacts. The affidavit, however, does show clearly the existence of contacts by Defendants with Massachusetts sufficient to satisfy the requirements of the Massachusetts long-arm statute. Throughout the affidavit, Woodruff is clear that Nabhan acted as the agent of WFL, OSC and/or him when Nabhan had contact with Massachusetts. *See* Preliminary Reply, Exhibit F ¶¶4-10. Woodruff even acknowledges that "[f]rom in or about December 1997 through January 1998, Nabhan and Sullivan maintained regular contact with each other about OSC-HLS business transactions. Part and parcel of *those mutual contacts between Texas and Massachusetts* centered on Sullivan and Nabhan directing the WFL investment $2.0 million [sic] in HLS." *Id.*, ¶18 (emphasis added).

Defendants appear to be asking this Court for leave to conduct discovery to prove a negative, *i.e.*, a lack of personal jurisdiction, which they could have and should have attempted to establish through affidavits attached to their *original* motion to dismiss rather than through discovery after Sullivan's opposition.

Defendants also rely only on conclusory allegations regarding to the due process requirements of exercising long arm jurisdiction. *See* Discovery Motion, p. 4 ("assuming, *arguendo*, minimum contacts of OSC, the exercise of personal jurisdiction would not comport with notions of fair play and substantial justice"). Discovery of Sullivan and of third parties will

---

[2] As explained in the accompanying opposition to the Defendants' Motion for Leave, Sullivan opposes Defendants' request to file either their Preliminary Reply or any future reply. Nevertheless, the Woodruff affidavit is the *only* sworn testimony submitted by Defendants.

not assist the Court in determining whether the due process requirements have been met; Defendants themselves are in the unique position to provide any information as to why such due process requirements would not be satisfied if personal jurisdiction were exercised by this Court. Seeking discovery from Sullivan for such purposes is frivolous.[3]

C.   The Cases Cited By Defendants Do Not Support Their Argument For Jurisdictional Discovery

The cases cited by Defendants do nothing to further their argument that jurisdictional discovery is appropriate in the present case. Not one of the cases stands for the proposition that jurisdictional discovery is appropriate when the party seeking discovery is trying to *disprove* the existence of jurisdiction. Discovery to prove the jurisdictional negative simply is not justified in the present case. In *Crocker v. Hilton Int'l Barbados, Ltd.*, 976 F.2d 797, 801 (1st Cir. 1992), the Court of Appeals upheld the District Court's *denial* of discovery relating to personal jurisdiction because the information sought was irrelevant to deciding whether personal jurisdiction existed. While the Court in *Crocker* actually found that the Massachusetts long-arm statute did not reach the defendant, this holding was based on the fact that the defendant was suing in Massachusetts based on a personal injury that had occurred in Barbados, which under then-existing precedent the Court held could not be deemed to have arisen from a transaction in Massachusetts.[4] *See id.* at 799. In the present case there can be no dispute that this action arises

---

[3] For a full discussion of the due process requirements are not at issue, see Sullivan's Opposition to Defendants' Motion to Dismiss, pp. 12-17.

[4] This precedent strictly construing when a claim arises from a transaction in Massachusetts is no longer good law. "[T]he Supreme Judicial Court of Massachusetts dealt our restrictive interpretation a fatal blow in [*Tatro v. Manor Care, Inc.*, 416 Mass. 763, 625 N.E. 2d 549, 551 (1994)]. The Court decided that the 'but for' test is more consistent with the language of the long-arm statute and explicitly rejected our interpretation of the statute in the [*Marino v. Hyatt Corp.*, 793 F.2d 427 (1st Cir. 1986)] line of cases. [including *Crocker*]." *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 713 (1st Cir. 1996).

from Defendants' contacts with Massachusetts, and the Defendants have not provided any evidence to the contrary. In *Edmond v. United States Postal Serv. Gen. Counsel*, 949 F.2d 415, 425 (D.C. Cir. 1991) the facts surrounding personal jurisdiction were much more complicated, involving questions about the reach of the District of Columbia's long-arm statute to defendants who were alleged co-conspirators but who were not present in the District of Columbia. In addition, the parties seeking discovery were the parties trying to establish the existence of jurisdiction, not the *lack of* jurisdiction. *See id.* In *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986), the Ninth Circuit Court of Appeals actually upheld the District Court's *denial* of discovery for personal jurisdiction when the party seeking discovery merely made allegations that "they would 'need to engage in discovery in order to support jurisdictional allegations.'" Defendants in the present case have not provided any clearer explanation of how they expect discovery to aid them to prove a lack of personal jurisdiction. Indeed, Defendants appear to be seeking discovery to prove Sullivan had contacts with Texas, which is not relevant to the question of whether this Court has jurisdiction over Defendants in Massachusetts.

IV.    Supplemental Reply And Memorandum In Support Should Not Be Permitted

Defendants have had more than a sufficient opportunity to present their jurisdictional arguments to this Court. They clearly stated in their motion to dismiss that "Plaintiff's declaratory judgment action should be dismissed for two reasons. First, this Court does not have personal jurisdiction over the Defendants who are all citizens of Texas.... Second, there is no basis for federal subject matter jurisdiction over plaintiff's state law declaratory judgment action." Motion to Dismiss, p. 1. Defendants did not provide any evidence in support of their motion, although it seems fundamental that the motion to dismiss for lack of personal jurisdiction required an affidavit denying contacts with Massachusetts. Nor did Sullivan's Opposition raise any new matters necessitating a reply; instead, it addressed the Defendants' motion and proffered evidence that personal and subject matter jurisdiction were in fact present. That Defendants filed an inadequate motion to dismiss does not give them the right to now file a

reply (after irrelevant discovery) to present information that should have been filed with their motion. Otherwise, Sullivan would be put at a serious disadvantage, having responded to Defendants' Motion to Dismiss without having seen Defendants' argument.

V.     Sullivan's Use Of The Declaratory Judgment Act Is Proper And Justified

Defendants attempt to raise a new argument that Sullivan's effort to obtain a declaratory judgment is "an improper use of this action." Discovery Motion, ¶3. Initially, Defendants never argued that Sullivan was using a declaratory judgment motion in an improper manner until they filed their Discovery Motion and Preliminary Reply. As a result, Defendants should not be allowed to raise this new argument at this late juncture. Nevertheless, in an abundance of caution, Sullivan will address this argument.

A declaratory judgment action in the present circumstances is entirely appropriate. "'Basically, the question in each case is whether the facts alleged, under all the circumstances, show the there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Cunningham Bros, Inc. v. Bail*, 407 F.2d 1165, 1169, *cert. denied*, 395 U.S. 959 (quoting *Maryland Cas. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510, 512, 85 L. Ed. 826 (1941)).[5] Defendants have demonstrated time and again that they are willing to use the

---

[5] Defendants cite *Cunningham* for the proposition that "because [declaratory relief] is intended to operate prospectively, no basis exists where only past acts are involved." Preliminary Reply, ¶3. *Cunningham* is inapposite to the present set of facts. *Cunningham* only addresses the issue of a declaration of non-liability in the context of a personal injury suit involving negligence, where the court held that declaratory relief was inappropriate when it "would force an injured party to litigate a claim which he may not want have wanted to litigate at a time which might be inconvenient to him or which might precede his determination of the full extent of his damages …." *Cunningham*, 407 F.2d at 1169. The court even expressly recognized that "Of course, non-liability may be declared in appropriate cases." *Cunningham*, 407 F.2d at 1168 n.2 (citing *State Farm Mut. Auto Ins. Co. v. Mossey*, 195 F.2d 56 (7th Cir. 1952), *cert. den. sub nom. Du Bois v. Mossey*, 344 U.S. 869)). The present situation is one of those appropriate cases where a live controversy exists. The other cases cited by Defendants in support of their argument are also

(footnote continued to next page)

procedures available to them in Texas state court to place Sullivan in a perpetual state of

uncertainty.  Defendants have now filed no fewer than eight (8) petitions (complaints) in Texas

courts, with various parties and allegations.  Sullivan is entitled to the certainty this Declaratory

Judgment Action will bring regarding any liability to Defendants.  A controversy clearly exists

between Sullivan and Defendants, and as such, declaratory relief is appropriate.  *See Browning-*

*Ferris Indus. of Ala. Inc. v. Alabama Dept. of Envtl. Mgmt.*, 799 F.2d 1473, 1478 (11th Cir. 1986)

("The question of 'the fitness of the issues for judicial decision' in essence comes down to a

decision as to whether the court is presented with an abstract question or a concrete

controversy."); C. Wright, A. Miller & M. Kane, 10B Federal Practice and Procedure Civil 3d §

2757 at 475 (1998) ("There is little difficulty in finding an actual controversy if all of the acts

that are alleged to create liability already have occurred.  The court is then merely being asked,

as in any litigation, to determine the legal consequences of past events and it is immaterial that it

---

(footnote continued from previous page)

inapposite.  In *BASF Corp. v. Symington*, 50 F.3d 555, 559 (8thCir. 1995), the court found a declaratory
judgment action inappropriate because the party moving for the declaratory judgment engaged in forum
shopping for the purposes of taking advantage of a favorable statute of limitations, not because the events
occurred in the past.  In *Lexington Ins. Co. v. City of Phoenix*, the Court actually states the proposition
that "Declaratory judgment properly is provided where the natural defendant in a potential legal
controversy is injured by the 'uncertainty and insecurity' of a delay in its resolution." No. 96-10139-
WGY, 1996 WL 463672, at *2 (D. Mass. 1996) (citing *Aetna Casualty & Sur. Co. v. Quarles*, 92 F.2d
321, 325 (4th Cir. 1937); *accord Cunningham*, 407 F.2d at 1167-68).  Defendants cite *Torch, Inc. v.
LeBlanc*, 947 F.2d 193, 196 n.2 (5th Cir. 1991), for the proposition that "prospective tort action
defendants may not use declaratory judgments to obtain a declaration of non-liability."  Preliminary
Reply, p.3.  But what the case actually says is that "'it is not one of the purposes of the declaratory
judgment acts to enable a prospective *negligence* action defendant to obtain a declaration of non-
liability.'"  *Torch*, 947 F.2d at 196 n.2 (quoting *Cunningham*, 407 F.2d at 1168) (emphasis added).  In
*Chevron U.S.A., Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1154 (5th Cir. 1993), the Court held that an
actual controversy existed that justified declaratory relief.  The extent of its discussion of the use of the
Declaratory Judgment Act for past acts appears to be a citation to *Hardware Mut. Cas. Co. v. Schantz*,
178 F.2d 779, 780 (5th Cir. 1949), which the *Chevron* court quotes for the proposition that "'The purpose
of the Declaratory Judgment Act is to settle 'actual controversies' before they ripen into violations of law
or breach of some contractual duty.'"  *Chevron*, 987 F.2d at 1154.

may be the one allegedly liable, rather than the person to whom he would be liable, who asks for the judicial determination.") (footnote omitted).  An actual controversy exists and Sullivan deserves the chance to resolve it.

## CONCLUSION

Accordingly, and for the foregoing reasons, Plaintiff Daniel J. Sullivan respectfully requests that this Court enter an Order denying Defendants' motion (1) for discovery on jurisdictional issues and (2) for leave to file supplemental reply and memorandum in support and denying Defendants' motion to dismiss for lack of personal and subject matter jurisdiction and granting Sullivan such other and further relief as is just and proper.

Dated:  Boston, MA
        August 4, 2005

                                Respectfully submitted,

                                DECHERT LLP

By: _____
                                Bernard J. Bonn III (BBO#049140)
                                Matthew M. Lyons (BBO# 657685)
                                200 Clarendon Street, 27th Floor
                                Boston, MA 02116
                                (617) 728-7100

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney(s) of record for each other party on August 4, 2005.

_____
                                Bernard J. Bonn, III

-11-